39 F.3d 1181
 1994-2 Trade Cases P 70,785
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BROOKESIDE AMBULANCE SERVICE, INC., d/b/a Rumpf Ambulance
Service, Plaintiff-Appellant,
v.
WALKER AMBULANCE SERVICE, INC., Defendant-Appellee.
 No. 93-4135.
 United States Court of Appeals, Sixth Circuit.
 Oct. 26, 1994.
 
 Before: KEITH, KENNEDY, and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Brookeside Ambulance Service appeals the order of the District Court granting summary judgment in favor of Walker Ambulance in this antitrust action. Plaintiff contends that defendant violated the Sherman Act, 15 U.S.C. Sec. 2, by monopolizing or attempting to monopolize the ambulance services market in Toledo, Ohio. Specifically, plaintiff claims that defendant engaged in the following anticompetitive practices: opening ambulance stations near two of plaintiff's stations for the purpose of driving plaintiff out of business; improperly responding to ambulance calls that should have gone to plaintiff; defaming plaintiff; refusing "no pay" customers; acquiring other ambulance companies; and excluding plaintiff from meetings with other ambulance companies. On appeal, plaintiff argues that the District Court impermissibly made factual findings, and improperly granted summary judgment as a result. For the following reasons, we affirm the District Court's judgment.
 
 I.
 
 2
 Both plaintiff and defendant provide ambulance services in Toledo, Ohio. Plaintiff provides basic life support ("BLS") services only. Defendant provides BLS and advanced life support ("ALS") services. Plaintiff began operating in Toledo in 1991, after acquiring another ambulance company. Toledo sets price ceilings for both ALS and BLS services.
 
 
 3
 Ambulance companies receive two kinds of calls for their BLS services. A hospital or nursing home may call the company directly and request that a patient be transported, or the company may receive a call from Lucas County Emergency Medical Services ("LCEMS"). This dispute concerns only LCEMS calls. LCEMS dispatches ambulances by calling the ambulance company with the station closest to the person needing services. If no ambulance is available at the closest station, the ambulance company with the next closest station takes the call. Defendant has five ambulance stations and eighteen ambulances. Plaintiff had four ambulance stations. Plaintiff initially acquired four stations, closed one, and later opened another in an area previously served by defendant. Both plaintiff and defendant agree that defendant has the largest market share of all ambulance companies in the city.
 
 II.
 
 4
 Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Proc. 56(c). A district court reviewing a summary judgment motion must make all inferences in favor of the nonmoving party. See Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir.1990). This Court reviews a district court's grant of summary judgment de novo. See id.
 
 III.
 
 5
 Section 2 of the Sherman Act prohibits the monopolization and attempted monopolization of a market. 15 U.S.C. Sec. 2. A firm attempts to monopolize a market if it has the specific intent to monopolize, engages in anticompetitive conduct, and has a dangerous probability of succeeding. See Arthur S. Langenderfer, Inc. v. S.E. Johnson Co., 917 F.2d 1413, 1431 (6th cir. 1990), cert. denied, 112 S.Ct. 51, 112 S.Ct. 274 (1991). A firm monopolizes a market if it possesses monopoly power in the relevant market, and willfully acquires or maintains that power through anticompetitive practices. See United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966).
 
 
 6
 As a threshold matter, plaintiff cannot succeed in an attempted monopolization claim unless defendant has market power. See Spectrum Sports v. McQuillan, 113 S.Ct. 884 (1993). According to plaintiff's calculations, defendant performed 78% of the BLS runs in Toledo during 1992. Defendant argues that despite its large market share, it does not have market power because Toledo sets a price ceiling for BLS runs. We reject this argument because plaintiff presented evidence that ambulance providers charge rates below the price ceiling. See P. Areeda & H. Hovenkamp, Antitrust Law p 518.3d (Supp.1992).
 
 
 7
 A. "Station Blocking"
 
 
 8
 Plaintiff claims that defendant opened stations in close proximity to two of plaintiff's stations for the purpose of driving plaintiff out of business. As a result, plaintiff claims that it was forced to close its newly opened station, and lost a considerable portion of the area for which the other station was the primary server. Defendant claims that it opened the stations to increase its revenues, decrease response times, and provide better back-up to its other stations. Defendant states it subsequently closed one of these stations when the volume of calls was lower than expected, and it had a problem with a security guard at the property.
 
 
 9
 In determining whether a defendant is engaging in anticompetitive conduct for purposes of section 2 of the Sherman Act, "[l]iability turns, ... on whether 'valid business reasons' can explain [defendant's] actions." Eastman Kodak Co. v. Image Technical Serv., Inc., 112 S.Ct. 2072, 2091 (1992). To avoid summary judgment, plaintiff must offer evidence to rebut defendant's legitimate business explanation. See Beard v. Parkview Hospital, 912 F.2d 138, 145 (6th Cir.1990) (holding that summary judgment was appropriate where plaintiff failed to rebut defendant hospital's proffered reason for its exclusive contract with radiologists). The District Court found, and we agree, that plaintiff failed to offer any evidence to rebut defendant's explanations for opening stations in close proximity to plaintiff's stations and later closing a station.
 
 
 10
 B. "System Status Management" or "Run-jumping"
 
 
 11
 Plaintiff claims that defendant improperly responded to ambulance calls that should have gone to plaintiff's stations by "run-jumping," that is, moving ambulances from one station to another in anticipation of receiving calls and in an effort to keep all stations covered. Plaintiff also claims that defendant deliberately told LCEMS that it had ambulances at certain stations when it did not, and responded to calls with vehicles from other stations. Plaintiff states that both of these practices violate LCEMS protocol.
 
 
 12
 We first address the practice of run jumping. Defendant admits that it engages in "System Status Management" ("SSM"). Defendant states that pursuant to SSM, if a station had no ambulances available, it would move one to that station from another station to maximize its ability to receive calls. Additionally, one of defendant's employees admitted that he would listen to 911 calls on the scanner and move ambulances to stations closest to the origins of the calls in anticipation of receiving dispatches.
 
 
 13
 We agree with the District Court's finding that this practice, regardless of whether it violates LCEMS protocol, is not anticompetitive. See Areeda, supra, at p 729.3. (The fact that a practice is unfair, or violates a contract, alone does not make it an antitrust violation.). Run-jumping, or SSM, maximizes a firm's ability to receive calls, and promotes the efficient use of its ambulance fleet by moving ambulances to the stations where they are most likely to be needed. A firm, regardless of its market power, may engage in efficiency-enhancing behavior. See Langenderfer, 917 F.2d at 1441 ("We conclude that defendants may not be held liable for antitrust conduct to the extent that, as asphalt paving contractors, they acquired additional limestone and/or sand sources which added to their efficiency and ability to submit profitable low bids on public highway contracts.").
 
 
 14
 Plaintiff also claims that defendant would mislead LCEMS by stating that it had ambulances available at particular stations when it did not, and would respond to calls with ambulances from stations that were not the closest to the persons needing services. Defendant denies ever giving false information to LCEMS. Although this practice could be anticompetitive, plaintiff has presented no evidence to support this allegation.
 
 C. Defamatory Remarks
 
 15
 Plaintiff claims that defendant has made false and defamatory remarks to plaintiff's customers. The only evidence plaintiff presented on this issue was the affidavit of its president, David Kish. We agree with the District Court that Kish's own conclusory statements are insufficient to create a genuine issue of material fact.
 
 D. Refusing Service to "No-Pay" Customers
 
 16
 Plaintiff claims that defendant refused service to customers who were unable to pay. As a result, plaintiff contends that it was required to tie up its ambulances assisting "no pay" customers. Plaintiff, however, only points to one incident in which a non-paying client was refused service by defendant. Although defendant's conduct may violate LCEMS protocol or be unethical, it does not rise to the level of an anticompetitive practice. See Langenderfer, 917 F.2d at 1422-23 ("The Sherman Act ... does not reach conduct that is only unfair, impolite, or unethical.").
 
 E. Acquisition of Other Ambulance Companies
 
 17
 Plaintiff claims that defendant purchased other ambulance companies and later closed their stations. These acquisitions, however, occurred prior to plaintiff's entry into the market. Therefore, plaintiff cannot claim to have been injured by them.
 
 F. Meetings with Rivals
 
 18
 Plaintiff claims that defendant held meetings with rivals to discuss Toledo's price ceiling and did not invite plaintiff. Defendant claims that it did not organize these meetings, and that the meetings were for the purpose of discussing the ALS price ceiling. Plaintiff does not provide ALS services. Plaintiff presented no evidence about the nature of these meetings, nor does plaintiff specify how it was injured by the meetings. We agree with the District Court, therefore, that plaintiff has not established that a genuine issue of material fact exists as to the anticompetitive conduct of these meeting.
 
 IV.
 
 19
 Accordingly, the District Court's judgment is AFFIRMED.